## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MAURY PAULINO, ) | |
| Plaintiff, ) | |
| v. ) | C.A. No. 1:11-cv-11940 |
| SETH D. RICHARD, NICOLAS ONISHUK, )<br>RICHARD DAVIS, SGT. JAMES MOORE, )<br>and the CITY OF BOSTON, ) | |
| Defendants. ) | |

## COMPLAINT

### INTRODUCTION

1.      This is a civil rights action against four Boston police officers and the City of Boston for falsely arresting and using excessive force against Maury Paulino because he openly recorded police activity with his cell phone. Defendant Richard arrested Mr. Paulino because he was recording Richard and other officers as they arrested a friend of Mr. Paulino's outside the Boston Police B-2 station. Mr. Paulino stood at a distance from the officers and did not interfere with them. After Defendant Richard arrested Mr. Paulino, he violently attacked him. Richard punched and kneed Mr. Paulino in the face and sprayed him with pepper spray while Defendants Nicolas Onishuk, Richard Davis and James Moore assisted him or stood by without intervening. Defendants brought baseless criminal charges against Mr. Paulino. He was found not guilty of all charges at trial.

2.      The City of Boston is sued for failing to supervise and discipline Boston police officers, thereby permitting them to unlawfully arrest people for videotaping police officers performing their official duties in public. The City failed to supervise and discipline

Boston police officers despite knowledge that they unlawfully arrested people for recording the officers' actions. The City's indifference to its officers' unlawful behavior permitted officers to feel that they could arrest people for recording their conduct without fear of punishment.

**JURISDICTION**

3.  This action is brought pursuant to 42 U.S.C. §1983 and § 1988 and the First, Fourth, and Fourteenth Amendments to the United States Constitution. Title 28 U.S.C. § 1331 and § 1343 provide federal question jurisdiction over all federal claims, and 28 U.S.C. § 1367 provides supplemental jurisdiction over state law claims.

**PARTIES**

4.  Plaintiff Maury Paulino is a resident of Suffolk County, Massachusetts.

5.  Defendant Seth D. Richard was at all times relevant to this complaint a duly appointed police officer of the Boston Police Department. His actions alleged in this complaint were taken under color of the laws of the Commonwealth of Massachusetts and the City of Boston. He is sued in his individual capacity.

6.  Defendant Richard Davis was at all times relevant to this complaint a duly appointed police officer of the Boston Police Department. His actions alleged in this complaint were taken under color of the laws of the Commonwealth of Massachusetts and the City of Boston. He is sued in his individual capacity.

7.  Defendant Nicolas Onishuk was at all times relevant to this complaint a duly appointed police officer of the Boston Police Department. His actions alleged in this complaint were taken under color of the laws of the Commonwealth of Massachusetts and the City of Boston. He is sued in his individual capacity.

8.      Defendant James Moore was at all times relevant to this complaint a duly appointed police officer of the Boston Police Department holding the rank of sergeant. His actions alleged in this complaint were taken under color of the laws of the Commonwealth of Massachusetts and the City of Boston. He is sued in his individual capacity.

9.      Defendant City of Boston is a duly organized city in the Commonwealth of Massachusetts.

**FACTS**

10.     On the evening of November 18, 2009, Mr. Paulino received a call from his friend Pablo Guerrero.

11.     Mr. Guerrero told Mr. Paulino he had been arrested and asked that Mr. Paulino come to the Boston Police Department B-2 station to bail him out.

12.     Mr. Paulino went to the B-2 station, paid the bail, and waited for Mr. Guerrero in the lobby.

13.     After approximately 15 minutes, Mr. Guerrero entered the lobby followed by Defendant Richard. The time was approximately 11:00 p.m.

14.     While still in the lobby, Mr. Paulino saw Mr. Guerrero grab paperwork out of Defendant Richard's hands. Mr. Paulino then watched as Defendant Richard and Mr. Guerrero exchanged heated words.

15.     During this time, Mr. Paulino was standing about ten to fifteen feet away from Defendant Richard and Mr. Guerrero.

16.     Mr. Paulino saw Defendant Richard shove and push Mr. Guerrero. Mr. Paulino felt the force used was excessive.

17.     Mr. Paulino told Mr. Guerrero they should leave. They left the police station lobby. While Mr. Guerrero was leaving Defendant Richard shoved him, forcing him out the

door. Then Defendants Onishuk and Davis came from the back of the station and joined Defendant Richard.

18.     After Mr. Guerrero and Mr. Paulino were outside the police station Defendant Richard approached Mr. Guerrero in order to arrest him again. Defendants Richard, Onishuk and Davis began pushing and shoving Mr. Guerrero. They threatened to spray Mr. Guerrero with pepper spray.

19.     Mr. Paulino, standing about ten to fifteen feet away from the three police officers and Mr. Guerrero, removed his cell phone from his pocket and began recording the incident.

20.     Mr. Paulino asked the officers why they were arresting Mr. Guerrero and why they were using so much force, including pepper spray.

21.     Defendant Richard threatened to strike Mr. Paulino with his baton.

22.     Defendants Richard, Onishuk and Davis secured Mr. Guerrero and began bringing him into the station.

23.     Mr. Paulino did not curse, threaten, or otherwise act in an aggressive manner toward Defendants. Nor did Mr. Paulino interfere with Defendants as they arrested Mr. Guerrero.

24.     As the three officers reached the entrance to the police station, Defendant Richard returned toward Mr. Paulino. Defendant Richard said to Defendants Onishuk and Davis, "He's going too," and he asked for another set of handcuffs.

25.     Defendant Richard tried to grab the cell phone from Mr. Paulino's hand. Defendant Richard grabbed Mr. Paulino and forced him back into the lobby of the police station.

26.     Once inside the station, Defendant Richard tackled Mr. Paulino and brought him to the floor. Defendant Moore joined the other three Defendants at this point. One police officer held Mr. Paulino by his left hand while another pushed him to the floor by pressing his knee into Mr. Paulino's back and neck. During this time, Mr. Paulino's right hand, still holding the cell phone, was pinned under his body.

27.     While on the floor, Mr. Paulino moved his head. Defendant Richard punched him in the face.

28.     Mr. Paulino turned his head again and Defendant Richard punched him again.

29.     Defendant Richard then sprayed Mr. Paulino with two blasts of pepper spray before kneeing him in the right side of the face. Defendant Richard then punched Mr. Paulino in the face a third time.

30.     Defendants Onishuk, Davis and Moore could have prevented the use of unreasonable force on Mr. Paulino but they failed to take any steps to protect him from Defendant Richard's conduct.

31.     Defendant Richard then demanded that Mr. Paulino "get the f--- up." Mr. Paulino said he could not get up because another Defendant was pinning him to the ground by his back.

32.     Mr. Paulino also explained that he had asthma and was having trouble breathing due to the officer's use of pepper spray.

33.     Officer Richard then yanked Mr. Paulino up from the ground by the collar of his jacket before handcuffing him to the wall in the booking area.

34.     Defendants violated Mr. Paulino's clearly established constitutional rights. Before this incident, it was clearly established that the First Amendment protects recording

police officers in public spaces performing their official duties. *Glik v. Cunniffe*, 655 F.3d 78 (1st. Cir. 2011).

35.     At approximately 2:00 a.m., Mr. Paulino's mother arrived at the police station and bailed him out. When he was released from custody he had a bruised lip, swollen cheek, swollen eyes, and cuts on his wrists.

36.     Mr. Paulino went directly to the emergency room at Boston Medical Center. At the hospital he was treated for multiple injuries to his face, jaw, and mouth. Medical staff observed bruising by his toothline and jawline, abrasions on his neck, and bleeding from his mouth, nose, and lips. Mr. Paulino was also observed spitting up blood. The treating physicians documented a laceration on Mr. Paulino's scalp.

37.     Mr. Paulino was charged with Mass. Gen. Laws ch. 272, § 99, violation of the wiretap statute; Mass. Gen. Laws ch. 268, § 32B, resisting arrest; Mass. Gen. Laws ch. 272, § 53, disorderly conduct; and two counts of Mass. Gen. Laws ch. 265, § 13, assault and battery on a police officer.

38.     Mr. Paulino did not engage in disorderly conduct. He did not assault any police officer, nor did he resist arrest. There was no probable cause to arrest him or prosecute him for any of these charges.

39.     There was no probable cause to arrest Mr. Paulino for violating the wiretap statute. The clerk magistrate dismissed the wiretap statute violation charge for lack of probable cause.

40.     After the prosecution presented its case, the judge granted Mr. Paulino's motion for a required finding of not guilty on all charges.

41.     As a result of Defendants' conduct, Mr. Paulino suffered physical and emotional injuries. Mr. Paulino suffered the physical injuries described above. Mr. Paulino

was upset that he had been arrested and beaten simply for documenting the actions of police officers in arresting his friend. He knew he was innocent but he feared that he could be convicted of these false charges, which could hurt him in the future at school and in obtaining work.

**COUNT I**     **42 U.S.C. § 1983 Claim Against Individual Defendants RICHARD, DAVIS, ONISHUK, and MOORE**

42.     The above paragraphs are incorporated by reference.

43.     Defendants Richard, Davis, Onishuk, and Moore, acting in concert, arrested Plaintiff without probable cause.

44.     Defendants Richard, Davis, Onishuk and Moore, acting in concert, used unreasonable and excessive force against Plaintiff

45.     Defendants Richard, Davis, Onishuk, and Moore, acting in concert, arrested and assaulted Plaintiff for exercising his right to record police activity in public places and to question police officers.

46.     Defendants' actions deprived Mr. Paulino of his well-established rights under the First and Fourth Amendments to the United States Constitution.

47.     Their actions were taken in reckless disregard for Plaintiff's constitutional rights.

48.     As a direct and proximate result of Defendants' actions, Mr. Paulino suffered the damages described above.

**COUNT II**     **Massachusetts Civil Rights Act M.G.L. c. 12, § 11I Against Defendants RICHARD, DAVIS, ONISHUK, and MOORE**

49.     The above paragraphs are incorporated by reference.

50.     Defendants Richard, Davis, Onishuk, and Moore arrested and assaulted Mr. Paulino to stop him from recording them, to intimidate him from disseminating the

recording he made, and to serve as a lesson to him and others that videotaping Boston police officers could result in arrest and/or physical harm.

51.    Acting jointly and in concert, Defendants Richard, Davis, Onishuk and Moore violated Mr. Paulino's civil rights under the Massachusetts Civil Rights Act, M.G.L. c. 12, § 11I, by threats, intimidation, and coercion.

52.    As a direct and proximate result of Defendants' actions, Mr. Paulino suffered the damages described above.

**COUNT III    Massachusetts Tort of Malicious Prosecution Against Defendants RICHARD, DAVIS, ONISHUK, and MOORE**

53.    The above paragraphs are incorporated by reference.

54.    Acting jointly, Defendants Richard, Davis, Onishuk, and Moore caused criminal charges to be brought and continued against Mr. Paulino without probable cause and with malice. The criminal charges were all disposed of favorably to Mr. Paulino.

55.    As a direct and proximate result of Defendants' actions, Mr. Paulino suffered the damages described above.

**COUNT IV    42 U.S.C. § 1983 *Monell* Claim Against Defendant CITY OF BOSTON**

56.    The above paragraphs are incorporated by reference.

57.    The policies and customs of the City of Boston as described above and herein were the moving force behind the violations of Mr. Paulino's constitutional rights by Richard, Davis, Onishuk, and Moore.

58.    The police department issued a training bulletin on January 23, 2002, informing police officers that only secret recording of a police officer is unlawful. Then the department allowed its officers to arrest people who openly recorded police conduct for felony wiretap violations. These arrests were without probable cause.

59. All arrest reports in the Boston Police Department are reviewed by a superior officer to ensure they are accurate, complete, and comply with the law.

60. Before Plaintiff was arrested, there was a pattern of Boston police officers arresting people for openly recording them while they were performing their official duties in public.

61. Boston Police Officers wrote in their reports on these arrests that the officer told the person the officer did not consent to being recorded and, if the person continued the recording, arrested the person.

62. When arresting people for openly recording them while performing their official duties in public, Boston police officers also alleged that the videographer was disturbing the peace or interfering with an arrest because they were recording the police officers, just as Defendants did in this case.

63. Supervisors approved arrest reports when the police officers said they arrested the person for openly recording police officers performing their official duties in public. As in this case, officers included a statement that they said they did not consent to the recording even though, under state law, consent is not required for openly recording a person.

64. As a direct and proximate result of Defendants' actions, Mr. Paulino suffered the damages described above.

**WHEREFORE**, Plaintiff requests that this Court:

1. Award compensatory damages;

2. Award punitive damages against Defendants Richard, Davis, Onishuk, and Moore;

3. Award the cost of this action, including reasonable attorney's fees; and

4. Award such other further relief as this Court may deem necessary and appropriate.

**JURY DEMAND**

A jury trial is hereby demanded.

RESPECTFULLY SUBMITTED,
For the Plaintiffs,
By their attorneys,

/s/ Howard Friedman
Howard Friedman, BBO #180080
Law Offices of Howard Friedman, P.C.
90 Canal Street, Fifth floor
Boston, MA 02114-2022
617-742-4100
hfriedman@civil-rights-law.com

/s/ David Milton
David Milton, BBO #668908
Law Offices of Howard Friedman, P.C.
90 Canal Street, Fifth floor
Boston, MA 02114-2022
617-742-4100
dmilton@civil-rights-law.com

Dated: November 2, 2011